JUDGE CASTEL                09 CV 7671

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
R SHIPPING  INC.,                                      :      09 Civ.

                              Plaintiff,               :      ECF CASE

        - against -                                    :

CONTINENTAL SALES LIMITED,                             :

                              Defendant.               :
------------------------------------------------------------------X

RECEIVED
SEP - 3 2009
U.S.D.C. S.D. N.Y.
CASHIERS

## VERIFIED COMPLAINT

Plaintiff, R SHIPPING INC. (hereinafter "RS" or "Plaintiff"), by and through its

attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the

Defendant, CONTINENTAL SALES LIMITED (hereinafter "CSL" or "Defendant"), alleges,

upon information and belief, as follows:

1.        This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333.  This claim involves the

breach of a maritime contract of charter.  This matter also arises under the Court's federal

question jurisdiction within the meaning of 28 United States § 1331.

2.        At all times material to this action, Plaintiff was, and still is, a foreign corporation,

or other business entity organized and existing under foreign law with an office and place of

business at 44 Hatzikiriakou Street, Piraeus 185 38 Greece and was the disponent owner of the

M/T AINAZI (hereafter "Vessel").

3.        Upon information and belief, Defendant CSL was, and still is, a foreign

corporation, or other business entity, organized under, and existing by virtue of foreign law with

a place of business in Lagos, Nigeria and was at all material times the Charterer of the Vessel.

4.      By a charter party dated July 10, 2009 Plaintiff time chartered the Vessel to Defendant for 6 months + 6 months +/- 10 days in Charterer's option. The charter party stipulated a Vessel hire rate of $22,000 per day pro rata and also required Defendant to remit an agreed sum as a performance guarantee. *A copy of the charter party is attached hereto as Exhibit 1.*

5.      Plaintiff terminated the charter party on July 14, 2009 on the Defendant's repudiatory breach of the terms thereof.

6.      On August 11, 2009 the parties entered an agreement by which Defendant acknowledged its repudiatory breach and Plaintiff's lawful termination of the charter party and Plaintiff's entitlement to damages. Within the August 11, 2009 agreement the parties stipulated as follows regarding Plaintiff's damages:

(a)     $69,000 for time lost to the Vessel prior to termination and expenses incurred;

(b)     $660,000 for lost hire under the charter party (measured by the difference in hire under the charter party and the hire the Vessel is agreed deemed to be able to earn in other employment over the minimum contractual period of hire under the charter party); and

(c)     any and all other proven expenses (including but not limited to legal costs and expenses wheresoever incurred) arising out of or in connection with the pursuit and/or recovery of Plaintiff's damage.

*A copy of the August 11, 2009 Agreement is attached hereto as Exhibit 2.*

7.      CSL agreed to pay the Plaintiff's damages set forth in the August 11, 2009 Agreement upon demand. *See Ex. 2, ¶3.*

8.      CSL failed to pay Plaintiff's damages further required by the August 11, 2009 Agreement.

9.    The Defendant's failure to remit payment to the Plaintiff as required by the charter party and the August 11, 2009 Agreement is a direct breach of its obligations thereunder and constitutes a maritime claim.

10.    Due to the Defendant's breach of its aforesaid obligations the Plaintiff has appointed its arbitrator, Mr. David Aikman, and has demanded arbitration of its claims against CSL. *See arbitrator appointment / arbitration demand dated August 31 2009 attached hereto as Exhibit 3.*

11.    As a result of Defendant's breach of the charter party, Plaintiff has sustained damages as best as may be presently approximated in the total principal amount of $729,000 based on lost hire from the terminated charter party ($660,000) plus time lost to the vessel and expenses incurred prior to the termination ($69,000), exclusive of interest, arbitration costs and attorneys' fees.

12.    This action is brought in order to obtain jurisdiction over the Defendant and also to obtain security for Plaintiff's claims in aid of arbitration proceedings. Plaintiff has commenced arbitration proceedings in England on its claims against the Defendant.

13.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party in London arbitration conducted pursuant to English law. As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

| | | |
|---|---|---|
| A. | Principal claims | $729,000.00; |
| B. | Interest on claim (2 years compounded quarterly at 5%) | $ 76,170.37; |
| C. | Estimated arbitration costs: | $ 25,000.00; and |
| D. | Estimated attorneys' fees and expenses: | $ 75,000.00. |
| **Total:** | | **$905,170.37.** |

14.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendant. *See Affidavit in Support of Prayer for Maritime Attachment attached hereto as Exhibit 4.*

15.    The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendant and to secure the Plaintiff's claims as described herein.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Amended Complaint;

B.    That pursuant to 9 U.S.C. §§ 201. *et seq.* and/or the doctrine of comity this Court recognize and confirm any foreign judgment or arbitration award rendered on the claims had herein as a Judgment of this Court;

C.    That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all

tangible or intangible property of the Defendant within the District, including but not limited to any funds held by any garnishee, which are due and owing to the Defendant, up to the amount **$905,170.37** to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Verified Amended Complaint;

   D.  That this Court enter Judgment against Defendant on the claims set forth herein;

   E.  That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

   F.  That this Court award Plaintiff its attorney's fees and costs of this action; and

   G.  That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: September 3, 2009

             The Plaintiff,
             R. SHIPPING INC.

             By
             Kevin J. Lennon
             Darin L. Callahan

             LENNON, MURPHY & LENNON, LLC
             420 Lexington Ave., Suite 300
             New York, NY 10170
             (212) 490-6050 – phone
             (212) 490-6070 – fax
             kjl@lenmur.com
             dlc@lenmur.com

## ATTORNEY'S VERIFICATION

1.     My name is Kevin J. Lennon.

2.     I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.     I am an partner in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4.     I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.     The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.     The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7.     I am authorized to make this Verification on the Plaintiff's behalf.

Dated:        September 3, 2009

                                            Kevin J. Lennon

# EXHIBIT 1

**WORLD SEA TRADE S.A.**
24 Bouboulinas Str. 185 35 Piraeus Greece,
Tel:+30 210 4297428. Fax: +30 210 4297431. E-Mail: wstrade@otenet.gr

---

<u>FIXTURE NOTE DD 10TH JULY   2009</u>

THE FOLLOWING FIXTURE RECAP HAS BEEN MUTUALLY AGREED THIS
10 <sup>th</sup> DAY OF JULY 2009, BETWEEN MESSRS " CONTINENTAL SALES
LIMITED " OF LAGOS, NIGERIA AS CHARTERERS AND MESSRS
"R SHIPPING INC " AS TIME CHARTER OWNERS :

-CHARTERERS : "CONTINENTAL SALES LTD" OF LAGOS , NIGERIA.
CHARTERERS HV SUBMITTED TO VSL'S OWNERS VIA THEIR BROKER
WORLD SEA TRADE SA , THEIR COMPANY'S PROFILE PLUS THEIR
BANK REFERENCE LETTER., OWNERS HV ACCEPTED SAME AND HV
LIFTED THEIR SUBJECTS ON CHARTERERS BACKGROUND.

MT MNAZI

All details  speed and consumptions as per attached q88 and details stated below
------------------------------------------------------------------------------
SDWT       : 52,620 MTS
SDRAFT     . 12.50 M
LOA        195 30 M
BEAM       : 32.30 M
FLAG       : MARSHALL ISLANDS
BUILT      NOVEMBER 2008
CLASS      . TAI TANKER FOR OIL AND CHEMICALS , ESP, EO, SPM, ICE
           1B,DAT (-20 OC), TMONNAUTICUS(NEW BUILDING)IMO SHIP
           TYPE-3
STOPPERS   . 1 SLIDE TYPE / 200 MTS / 76 MM
CUBIC 98 PCT : 56190.3 CBM IN 12 CARGO TANKS
SLOP 98 PCT  1,327 CBM IN 2 SLOP TANKS
SEGREGATIONS   11555.20/14832.68/14990.22/14812.05
PUMPS      12 X 550 CBM/HR, 2 X 300 CBM HR
TPC        56.81
BCM        97.20 M
KTM        . 47.90 M
IGS        . YES
COW        : YES
SBT CBT    · SBT. 23,850 CBM
VRS        YES
GRT        . 30641
NRT        : 15308
PCN3       : TBA
SCNT       : TBA
PROVISION CRANE: 1 X 10.0 MTS
COATING YES, PHENOLIC EPOXY (HEMPEL 15500)

HULL        : DOUBLE BOTTOM / DOUBLE SIDES
P AND I     : SKULD

SPEED AND CONSUMPTION:

SPEED / DAILY CONSUMPTION UP TO AND INCLUDING BFORT 4:

LADEN:
service speed 14.0 kn - 36.0 mt HFO + 3.0 mt HFO for AE

BALLAST:
service speed 14.0 kn - 33.0 mt HFO + 3.0 mt HFO for AE

OWNERS WARRANT THE VESSEL'S FUEL OIL / DIESEL OIL DAILY TOTAL
CONSUMPTION IN METRIC TONS IN THE FOLLOWING CASES:

1/ IDLE: 6 M/T HFO MAXIMUM 380 CST
2/ LOADING FULL CARGO WITHIN 24 HOURS: 7 M/T HFO MAXIMUM 380
CST
3/ DISCHARGING FULL CARGO WITHIN 24 HOURS (INCLUDING INERTING
TANKS):
   12 mt HFO plus 9 mt MDO (for inerting during discharging).
4/ MAINTAINING CARGO TEMPERATURE AT 135 DEGE.:
15 M/T HFO MAXIMUM 380 CST AND HEATING UP - 10 M/T
5/ HEATING UP - 15 M/T (ADDITIONALLY TO MAINTAINING CARGO
TEMPERATURE)
6/ EXTRA CONSUMPTION AND TIME FOR RE-INERTING ALL CARGO
TANKS FROM A
GAS-FREE CONDITION: 14 mt MDO / 36 HOURS
7/ TANKS WASHING - 15 MT HFO + 5 MDO PER DAY.
8/ FOR INCINERATOR - 0.3 MT MGO / 24 HRS (6 mt per month)
9/ AIR CONDITION - 0.8 HFO / 24 HRS

CHARTERERS TO SUPPLY BUNKERS IN ACCORDANCE WITH BELOW
SPECS:

HFO 380CST WITHIN ISO 8217 2005 RMG380 SPECIFICATIONS AND TO
CONFORM WITH THE REGULATIONS 14 & 18 OF ANNEX VI OF MARPOL
73/78 - MAXIMUM 380CST AT 50 DEG C

AND FOR THE GASOIL:

GASOIL WITHIN ISO 8217 2005 DMA SPECIFICATIONS AND TO CONFORM
WITH THE REGULATIONS 14 & 18 OF ANNEX VI OF MARPOL 73/78 .

OWNERS:
-------
As per attached q88

MANAGERS:

2

----------------
As per attached q88

COMMERCIAL MANAGERS:
---------------
Fbk shipmanagment , st.petersburg , russia

TIME CHARTER OWNERS :
-----------
"R Shipping Inc"
44, Hatzikiriakou Str.,
PIRAEUS, 185 38
GREECE

OWNERS HV SEND TO CHARTERERS :
-vsl's commercial deser and vsl's Q88
-last 3 cargoes : go go jet
-last 3 charterers:clearlake/clearlake-bp

MAJOR APPROVALS
TO THE BEST OF OWNERS KNOWLEDGE VESSEL IS NOT UN ACCEPTABLE
TO:
SHELL upto 19/09/2009
BP upto 03/02/2010
STATOIL 07/02/2010
ExxonMobil evaluated upto 21/05/20009
INEOS evaluated upto 07/02/2011

PLSE NOTE DUE TO CHANGE OF VETTING PROCEDURE THE MAJORS
WILL NOT GIVE AN OUTRIGHT APPROVAL, BUT SCREEN THE VESSEL
ON A CASE BY CASE BASIS.
ACCORDINGLY THE ABOVE OIL MAJOR ACCEPTANCES ARE GIVEN AS
AN ADVICE TO THE BEST OF OWNERS KNOWLEDGE AND
SUBJECT TO SCREENING BY THE INDIVIDUAL OIL COMPANIES.
HOWEVER CHRTRS SHALL NOMINATE VESSEL TO LOAD/DISCHARGE
PORTS FOR EVERY VOYAGE ACCEPTANCE.

BROKER : WORLD SEA TRADE SA
CPA 10TH JULY 2009

TYPE OF CHARTER:
TIME CHARTER

PERIOD:
PERIOD TIME CHARTER OF STRAIGHT 6 MONTHS+ 6 MONTHS +/- 10
DAYS IN CHARTERERS OPTION.
OPTIONAL PERIOD DECLARABLE BY CHARTERERS LATEST W/IN 20
DAYS PRIOR EXPIRATION OF THE FIRST 6 MONTHS PERIOD.



3

AT THE TIME THAT VSL IS PASSING GIBRALTAR WEST BOUND
MIDNSHINC.

VESSEL TO BE DELIVERED/REDELIVERED FREE OF ANY WASHINGS
AND OR SLOPS

REDELIVERY:
DLOSP MIDNSHINC ONE SAFE PORT DAKAR-DUALA RANGE IN
CHARTERERS OPTION BUT ALWAYS WITHIN CHARTER PARTY TRADING
LIMITS WITH LAST CARGO CPP.

LAYCAN :

LAYCAN FOR VSL'S DELIVERY WHEN PASSING GIBRALTAR :
14-20 JULY 2009 TO BE NARROWED BY OWNERS UPTO 4 DAYS WINDOW
LATEST BY 13TH JULY COB GREECE.
Present schedule and position
The vessel is now at Malta and as per charterers Mssrs "Clearlake" instructions have to
proceed to Bizerta in Tunisia for discharging the balance cgo on board
ETA BIZERTA 13th July . AGENTS: SHIMAT SHIPPING:
tel 216.4.298.263 email: shimat@planet.tn
BIZERTA -GIBRALTAR - 743 MILES, VSL NEED ABT 2 DAYS STEAMING
IN BALLAST FROM BIZERTA TO GIBRALTAR
GIBRALTAR - LAGOS 3098 MILES. VSL NEED ABT 11 DAYS STEAMING
IN BALLAST FROM GIBRALTAR TO LAGOS.

HIRE RATE.
USD 22.000 TO OWNERS PER DAY PRO RATA LESS 2.5 TTL COMMS.
HIRE RATE EXCLUDING ANY CREW WAR RISK BONUSES IF ANY, OR
ADDITIONAL WAR RISK PREMIUM IF ANY

HIRE PAYMENTS :

UPON LIFTING CHARTERERS SUBJECTS, BOTH PARTIES TO SIGN WITHIN
MAX 2 HRS THE FIXTURE RECAP VIA FAX OR SCANNED EMAIL
OTHERWISE THIS AGREEMENT TO BE CONSIDERED NULL AND VOID.
UPON SIGNING THE FIXTURE RECAP CHARTERERS TO REMIT WITHIN 48
HRS BY WIRE TRANSFER THE FIRST 30 DAYS HIRE TO OWNERS
DESIGNATED BANK ACCNT AND THIS 30 DAYS HIRE PAYMENT TO BE
CONSIDERED AS A PERFORMANCE GUARANTEE GIVEN BY
CHARTERERS FOR ALL THE DURATION OF THE CHARTER.

THIS 30 DAYS PAYMENT WILL BE CALCULATED IN THE LAST HIRE
INVOICE WHICH WILL BE PROVIDED BY THE OWNERS TO THE
CHARTERERS ON THE EXPIRATION OF THE CHARTER PERIOD .

IT IS CLEARLY UNDERSTOOD THAT THIS FIXTURE AGREEMENT WILL BE
CONSIDERED IN FORCE ONLY UPON RECEIPT BY THE OWNERS OF
THE FIRST WIRE REMITTANCE WITHIN 48 HRS AFTER BOTH SIDES
SIGNING THE FIXTURE RECAP.
IN FIRST REMITTANCE WILL NOT BE RECEIVED AT ALL THE

4



OWNERS WILL NOT MOVE THE VSL FROM HER POSITION TO THE DELIVERY POINT AND THE CHARTER PARTY AGREEMENT TO BE CONSIDERED FROM BOTH SIDES NULL AND VOID WITH ALL LEGAL CONSEQUENCES TO THE CHARTERERS.

OWNERS HAVE AGREED WITH CHARTERERS THAT CHARTERERS CAN SEND AT BIZERTA PORT IN TUNISIA 1 OR 2 SUPERCARGOES TO BOARD THE VSL ,IF ONLY 1 SUPERCARGO WILL BOARD AT BIZERTA, THE 2ND TO BOARD EITHER AT GIBRALTAR OR AT LAGOS.
THE SUPERCARGOES WILL WAIT AT AGENTS OFFICE AND WILL BOARD THE VSL IMMEDIATELY AFTER OWNERS CONFIRMATION FOR THE RECEIPT OF THE FIRST 30 DAYS PAYMENT TO OWNERS BANK ACCOUNT
THE CPTN WILL START SENDING HIS DELIVERY ETA NOTICES TO CHARTERERS IMMEDIATELY UPON RCPT OF THE FIRST 30 DAYS HIRE PAYMENT BY THE OWNERS

IT HAS BEEN ALSO AGREED THAT :

1 CHARTERERS, UPON LIFTING THEIR SUBJECTS ,THEY WILL INSTRUCT THEIR BANK TO EFFECT A PAYMENT OF THE 30 DAYS HIRE AS PER THE FIXTURE RECAP AND OWNERS INVOICE.THE RELEVANT SWIFT SHALL BE PROVIDED DIRECTLY FROM CHARTERERS BANK TO THE OWNERS E MAIL ADDRESSES WITHIN 48 HRS UPON CHARTERERS LIFTING THEIR SUBJECTS .THE SWIFT SHALL BE "CONDITIONAL" AND STATEMENT OF THE CONDITIONS (WHICH HAVE TO BE STATED IN THIS SWIFT AND THE SAME SHALL BE SENT BY CHARTERERS BANK TO OWNERS BANK SHALL BE AS FOLLOWS

" THE FULL AMOUNT SHALL BE IRREVOCABLY AND UNCONDITIONALLY RELEASED TO MSSRS R SHIPPING INC WITHIN 24 HRS AFTER RECEIVING A CONFIRMATION FROM CHRTRS SUPERCARGO THAT HE HAS BOARDED THE VESSEL AT NEXT SCHEDULED PORT OF THE MT AINAZL

SUCH CONFIRMATION SHALL BE SENT BY CHARTERERS SUPERCARGO TO THE CHARTERERS IN CARBON COPY TO MSSRS R SHIPPING INC AND THE SAME SHALL BE CONFIRMED BY MASTER OF THE VESSEL BY SEPARATE MESSAGE

IN CASE IF CHARTERERS SUPERCARGO WILL NOT BE ABLE TO BOARD THE VESSEL BY HIS/CHARTERERS OWN REASONS WITHIN 48 HRS UPON RECEIPT OF NOTIFICATIONS FROM OWNERS REGARDING NEXT PORT OF CALL, THEN THE AMOUNT SHALL BE AUTOMATICALLY RELEASED TO THE MSSRS R SHIPPING AND THE VSL WILL SAIL WITHOUT SUPERCARGO ON BOARD TO THE DELIVERY PORT OF GIBRALTAR "

VALIDITY AND CAPACITY OF THE SWIFT SHALL BE FOR MINIMUM 30 CALENDAR DAYS.

2/ IT IS CLEARLY UNDERSTOOD THAT ONLY THESE CONDITIONS ,
WHICH HAVE TO BE CLEARLY UNDERSTOOD BY THE CHARTERERS
BANK ALSO, SHALL BE STATED IN SWIFT COPY OF THE REMITTANCE.

3 IT IS ALSO UNDERSTOOD THAT OWNERS SHALL KEEP CHARTERERS
CLOSELY INFORMED ABOUT VESSELS SCHEDULE AND NEXT PORT OF
CALL INCLUDING AGENTS FULL STYLE AT THIS PORT. OWNERS HAVE
NOW INFORMED CHARTERERS THAT THE VSL IS STILL AT MALTA AND
ETA BIZERTA ON 13 TH JULY, THE AGENT IS "SHIMAT SHIPPING" TEL.
216.4.298.263 email: shimat@planet.tn

4/ IT IS ALSO CLEARLY UNDERSTOOD THAT ALL OTHER TERMS AND
CONDITIONS OF THE CHARTER REMAIN UNCHANGED.

CHARTERERS SUBJECTS LIFTED AT 15:00 HRS LONDON TODAY 10.
07.2009 , THEREFORE CHARTERERS CONDITIONAL TRANSFER/SWIFT
SHALL BE IN OWNERS POSESSION LATEST BY 15:00 HRS LONDON ON
14 JULY 2009

UPON VSL'S ARRIVAL AT GIBRALTAR AND UPON RECEIPT FROM
CHARTERERS THE CPTN'S MSG WITH HIS ARRIVAL REPORT
TOGETHER WITH OWNERS HIRE INVOICE , THE CHARTERERS TO
REMIT TO OWNERS ANOTHER 15 DAYS HIRE IN ADVANCE TOGETHER
WITH THE COST OF BUNKERS ON DELIVERY , NEXT 15 DAYS HIRE TO
BE PAID TO OWNERS UPON VSL'S ARRIVAL AT LAGOS AND
TENDERING NOR TO CHARTERERS.

ALL NEXT HIRES TO BE PAID EVERY 30 DAYS IN ADVANCE, DAILY
HIRE RATE EXCLUDE ANY COMMUNICATIONS, VICTUALLING AND
EXPENSES AND INCLUDE CREW OVERTIME

DURING CHARTER PERIOD OWNERS HAVE THE LEGAL RIGHT TO STOP
THE VESSEL UNTIL THE HIRE DUE WILL BE RECEIVED IN THEIR BANK
ACNT OR TO WTHDRAW THE VESSEL FROM OPERATIONS FORWARDING
3 2 1 DAYS RELEVANT NOTICE TO CHARTERERS.
IF CHARTERERS FAIL TO COMPLY WITH THE ABOVE THEN OWNERS
CAN CONSIDER VESSEL FREE AND WITHDRAW FROM CHARTER PARTY
OBLIGATIONS WITHOUT ANY FURTHER NOTICE

C/V/E:
COMMUNICATIONS, VICTUALLING AND EXPENSES (C/V/E) :USD5.000 PER
MONTH, CHARTERERS CAN PLACE ON BOARD 2 SUPERCARGOES FOR
ALL DURATION OF THE CHARTER. CHARTERERS TO PAY USD 10 PER
DAY FOR EACH SUPERCARGO .THE SAME TO BE PAID BSS OWNERS
STATEMENT AND HAVE TO BE COVERED BY LOI (LETTER OF
INDEMNITY) FROM CHARTERERS AS PER OWNERS P+I CLUB WORDING.

BUNKERS :
CHARTERERS TO PURCHASE AND PAY TOGETHER WITH THEIR 2ND
PAYMENT 15 DAYS HIRE TO OWNERS. THE BUNKERS REMAINING

6

ON BOARD AS PER MASTER'S DECLARATION ON THE DELIVERY DATE
OF THE VSL TO CHARTERERS SERVICE IE WHEN VSL PASSING
GIBRALTAR.
CHARTERERS TO ACCEPT MASTER'S STATEMENT OF THE BUNKERS ON
BOARD SIGNED ALSO FROM CHARTERERS SUPERCARGO.

APPLICABLE PRICES AS PER OWNERS LAST PURCHASE WHICH TO BE
SUPPORTED BY RELEVANT INVOICE .
BUNKERS QUANTITIES ON DELIVERY DATE: ABT 950 MTONS IFO
380CST AND ABT 30 MTONS GASOIL
BUNKER PRICES : AS PER OWNWERS LATEST PURCHASE OF THE
BUNKER.
ON REDELIVERY DATE, ONWERS TO PURCHASE FROM CHARTERERS
THE REMAINING ON BOARD QUANTITY WITH SAME PRICES AS ON
DELIVERY DATE.
DELIVERY AND REDELIVERY QUANTITIES AND QUALITY OF BUNKERS
TO BE THE SAME. CHARTERERS ARE SOLELY RESPONSIBLE FOR THE
REFILLING OF THE VSL WITH BUNKERS AND PAYMENT OF THE
BUNKERING INVOICES DURING THE WHOLE CHARTER PERIOD.

NOTICES:
OWNERS TO TENDER 3/2/1 DAYS DEFINITIVE NOTICE OF DELIVERY.
CHARTERERS TO TENDER 15/10 DAYS APPROX NOTICE OF REDELIVERY
AND 7/3/1 DAYS DEFINITIVE NOTICE OF REDELIVERY
.

CARGOES/SEGREGATIONS:
MAX 3 GRADES WITHIN VSL'S NATURAL SEGREGATION VGO AND/OR
FUEL OIL AND/OR CRUDEOIL AND/OR MOLASSES .
ALL CARGOES TO BE COMPATIBLE WITH VESSELS LINES / PUMPS /
GASKETS / COATINGS / HEATING COILS AND IN ACCORDANCE WITH
VESSELS CLASS AND TECHNICAL RESTRICTIONS/SPECIFICATIONS
PROVIDED ALWAYS WITHIN CARGO DESCRIPTION. MAXIMUM
ALLOWED CARGO LOADING TEMPERATURE XX DEG F.
VESSEL IS ABLE TO MAINTAIN CARGO LOADED TEMPERATURE BUT
MAXIMUM 135 DEG.F. PROVIDED AMBIENT TEMPERATURE PERMITS.
CHARTERERS HAVE THE OPTION TO CARRY CPP/DPP AND OTHER
CARGOES ACCEPTABLE TO VESSELS COATING RESISTANCY LIST,
CLASSIFICATION AND IMO RULES.

CLEANING FROM DPP TO CPP (AS WELL AS BACKWARDS FROM CPP TO
DPP IF REQUESTED). ALL TIME AND COST TO BE FOR CHARTERERS
ACCOUNT. IF CHARTERERS DECLARE THIS OPTION. OWNERS WILL NOT
BE RESPONSIBLE FOR QUALITY OF ANY CARGO CARRIED AND CHTRS
TO INDEMNIFY OWNERS BY ISSUING LOI IN OWS P+I CLUB WORDING.
CHARTERERS TO PROVIDE NECESSARY CLEANING AGENTS, INCLUDING
BUT NOT LIMITED TO CHEMICAL CLEANERS. ADDITIONAL RIDING
CREW OR SHORE LABOUR IF REQUIRED AND TO ORGANIZE REMOVING
OF WASHING WATERS/SLOPS, RESULTING FROM SUCH CLEANING, FOR
THEIR TIME AND EXPENSE. VESSEL TO BE REDELIVERED BACK TO
OWNERS WITH LAST CARGO CPP .

CHARTERERS UNDERTAKE THAT ALL STS TRANSFER OPERATIONS PERFORMED UNDER OR IN CONNECTION WITH THIS CHARTER SHALL COMPLY WITH ALL APPLICABLE INTERNATIONAL, NATIONAL AND OR LOCAL LEGISLATION, REGULATIONS AND GUIDELINES INCLUDING INDUSTRY CODES OF PRACTICE, GUIDELINES AND RECOMMENDATIONS (SUCH AS THOSE ISSUED BY ISGOTT, SIGGTO, ICS, AND OCIMF)
ALL SHIP TO SHIP TRANSFER OPERATIONS TO BE SAFELY CARRIED OUT AND ALWAYS TO BE AT MASTER'S DISCRETION  BUT NOT TO BE UNREASONABLY WITHHELD, KEEPING IN MIND THE SAFETY OF THE VESSEL AND HER CREW.

ALL STS TRANSFER OPERATIONS PERFORMED UNDER OR IN CONNECTION WITH THIS CHARTER SHALL BE DEEMED TO BE UNDERTAKEN FULLY AND ENTIRELY AT CHARTERERS' SOLE RISK AND EXPENSE. CHARTERERS SHALL MAKE AND PAY FOR ALL ARRANGEMENTS RELATING TO SUCH OPERATIONS, FOR EXAMPLE (BUT WITHOUT LIMITATION) THE SUPPLY, RIGGING, MAINTENANCE AND UNRIGGING OF SUITABLE FENDERING; ALL ARRANGEMENTS RELATING TO THE PROVISION AND SUBSEQUENT RECOVERY OF GOOD AND SERVICEABLE CARGO HOSES; THE TRANSFER OF CARGO; THE ENGAGEMENT OF TUGS, PILOTS, MOORING MASTERS.

ANY TIME USED OR LOST IN CONNECTION WITH ANY SUCH MATTERS SHALL BE BORNE BY CHARTERERS. LIKEWISE, ANY EXPENSE ARISING OR TIME LOST FROM ADVERSE WEATHER CONDITIONS, FROM INTERMEDIATE BREAK-FREES OR ANY OTHER CAUSE ARISING DURING THE COURSE OF SUCH STS TRANSFER OPERATIONS SHALL BE FOR CHARTERERS ACCOUNT AND OWNERS SHALL BE PAID THEIR HIRE ACCORDINGLY.

TRADING:
WORLDWIDE TRADING BETWEEN  SAFE PORTS,BERTHS, ANCHORAGES AND ALWAYS AFLOAT,EXCLUDING ANY COUNTRY, PORT OR TERMINAL BOYCOTTED BY UN OR MAY FROM TIME TO TIME BE PROHIBITED BY VESSELS FLAG OR STATE AUTHORITY AND WHICH MAY LEAD TO OWNERS AND OR VESSEL BEING BLACKLISTED OR BOYCOTTED, TRADING ALWAYS EXCLUDING WAR ZONES AND COUNTRIES WHERE THE VESSEL CAN NOT TRADE BY VIRTUE OF THE REGISTRATION OF THE VESSEL AND/OR THE NATIONALITY OF HER OWNERS AND/OR MANAGERS

BIMCO ISPS CLS (REVISED BIMCO ISPS CLAUSE) FOR T/C
-----------------------------------------------------
A) FROM THE DATE OF COMING INTO FORCE OF THE INTERNATIONAL CODE FOR THE SECURITY OF SHIPS AND OF PORT FACILITIES AND THE RELEVANT AMENDMENTS TO CHAPTER XI OF SOLAS (ISPS CODE) IN RELATION TO THE VESSEL AND THEREAFTER DURING THE CURRENCY OF THIS CHARTER PARTY, THE OWNERS SHALL PROCURE THAT BOTH

8

THE VESSEL AND THE COMPANY (AS DEFINED BY THE ISPS CODE)
SHALL COMPLY
WITH THE REQUIREMENTS OF THE ISPS CODE RELATING TO THE
VESSEL AND THE COMPANY . UPON REQUEST THE OWNERS SHALL
PROVIDE A COPY OF THE RELEVANT INTERNATIONAL SHIP SECURITY
CERTIFICATE (OR THE INTERIM INTERNATIONAL SHIP SECURITY
CERTIFICATE) TO THE CHARTERERS. THE OWNERS SHALL PROVIDE THE
CHARTERERS WITH THE FULL STYLE CONTACT DETAILS OF THE
COMPANY SECURITY OFFICER (CSO).
(B) EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, PROVEN
LOSS, DAMAGE, EXPENSE OR DELAY, EXCLUDING CONSEQUENTIAL
LOSS, CAUSED BY FAILURE ON THE PART OF THE OWNERS OR THE
COMPANY TO COMPLY WITH THE REQUIREMENTS OF THE ISPS CODE
OR THIS CLAUSE SHALL BE FOR THE OWNERS' ACCOUNT.
B (I) THE CHARTERERS SHALL PROVIDE THE CSO AND THE SHIP
SECURITY OFFICER (SSO)/MASTER WITH THEIR FULL STYLE CONTACT
DETAILS AND, WHERE SUB-LETTING IS PERMITTED UNDER THE TERMS
OF THIS CHARTER PARTY, SHALL ENSURE THAT THE CONTACT DETAILS
OF ALL SUB-CHARTERERS ARE LIKEWISE PROVIDED TO THE CSO AND
THE SSO/MASTER.
FURTHERMORE, THE CHARTERERS SHALL ENSURE THAT ALL SUB-
CHARTER PARTIES THEY ENTER INTO DURING THE PERIOD OF THIS
CHARTER PARTY CONTAIN THE FOLLOWING PROVISION:
THE CHARTERERS SHALL PROVIDE THE OWNERS WITH THEIR FULL
STYLE CONTACT DETAILS AND, WHERE SUB-LETTING IS PERMITTED
UNDER THE TERMS OF THE CHARTER PARTY,SHALL ENSURE THAT THE
CONTACT DETAILS OF ALL SUB-CHARTERERS ARE LIKEWISE PROVIDED
TO THE OWNERS .
(II) EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS,
DAMAGE , EXPENSE OR DELAY, EXCLUDING CONSEQUENTIAL LOSS,
CAUSED BY FAILURE ON THE PART OF THE CHARTERERS TO COMPLY
WITH THIS CLAUSE SHALL BE FOR THE CHARTERERS' ACCOUNT.
NOTWITHSTANDING ANYTHING ELSE CONTAINED IN THIS CHARTER
PARTY ALL DELAY, COSTS OR EXPENSES WHATSOEVER ARISING OUT
OF OR RELATED TO SECURITY REGULATIONS OR MEASURES REQUIRED
BY THE PORT FACILITY OR ANY RELEVANT AUTHORITY IN
ACCORDANCE WITH THE ISPS CODE INCLUDING, BUT NOT LIMITED TO,
SECURITY GUARDS, LAUNCH SERVICES, TUG ESCORTS, PORT SECURITY
FEES OR TAXES AND INSPECTIONS, SHALL BE FOR THE CHARTERERS'
ACCOUNT, UNLESS SUCH COSTS OR EXPENSES RESULT SOLELY FROM
THE OWNERS' NEGLIGENCE. ALL MEASURES REQUIRED BY THE
OWNERS TO COMPLY WITH THE SHIP SECURITY PLAN SHALL BE FOR
THE OWNERS' ACCOUNT.
BIMCO FUEL SULPHUR CONTENT CLAUSE :
NOTWITHSTANDING ANYTHING ELSE CONTAINED IN THIS CHARTER
PARTY, THE CHARTERERS SHALL SUPPLY FUELS OF SUCH
SPECIFICATIONS AND GRADES TO PERMIT THE VESSEL, AT ALL TIMES,
TO MEET THE MAXIMUM SULPHUR CONTENT REQUIREMENTS
OF ANY EMISSION CONTROL ZONE WHEN THE VESSEL IS TRADING
WITHIN THAT ZONE. CHRTRS SUPPLY THE BUNKERS IN ACCORDANCE

9

WITH ANNEX VI OF MARPOL 73/78 ENTERED INTO FORCE ON 19.05.05
(REGULATIONS 14 AND 18).
THE CHARTERERS SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS
THE OWNERS IN RESPECT OF ANY LOSS, LIABILITY, DELAY, FINES,
COSTS OR EXPENSES ARISING OR RESULTING FROM THE CHARTERER'S
FAILURE TO COMPLY WITH THIS CLAUSE.
FOR THE PURPOSE OF THIS CLAUSE,EMISSION CONTROL ZONE SHALL
MEAN ZONES AS STIPULATED IN MARPOL ANNEX VI AND/OR ZONES
REGULATED BY REGIONAL AND/OR NATIONAL AUTHORITIES SUCH AS,
BUT NOT LIMITED TO, THE EU AND THE US
ENVIRONMENTAL PROTECTION AGENCY.

### VALID APPROVAL/SIRE CLAUSE

Owners warrant that the vessel is in all respects eligible under applicable laws and
regulations for trading to the ports and places specified in under this Charter Party and
that at all times she shall have on board all certificates, records and other documents
required for such service
In addition Owners shall be responsible to maintain any approvals and a valid sire
inspection present at time of fixing. Owners are to make best efforts to obtain other
approvals acceptances that may be required by Charterers during the duration of this
Time Charter Contract. Once the above approvals/acceptances have been obtained,
Owners will ensure that such approvals/acceptances will be maintained throughout the
duration of the Time Charter.
In the event that the vessel fails to maintain approvals and a valid sire inspection, or
during an inspection deficiencies are noted, Owners shall notify Charterers
immediately and provide Charterers with a list of said deficiencies. In the event such
deficiencies are found, Owners shall take immediate steps to rectify such deficiencies
and have the vessel re-inspected by said oil company at the earliest possible
opportunity,provided that inspector(s) are available and that Owners request
for vetting re-inspection is not declined unreasonably by Oil Company. Owners shall
keep Charterers advised of actions taken and intended re-inspection schedule. Should
the vessel remain unacceptable for a period of 20 days from the date of the oil
company inspection as a direct result of Owners failure to correct deficiencies
promptly, provided that said major oil company is prepared to inspect the vessel, then
Charterers shall have the right to place the vessel off-hire until such approval is
obtained, provided that this is directly affecting the trading of the vessel under terms
and conditions set out in the charterparty.max 3 major oil company approvals to be
for owners time/risk and expences,  over and above, if required, for chrtrs account"

### OWNERS' ADDITIONAL CLAUSES
--------------------------------

WIWL CLAUSE
TRADING AREA TO BE ALWAYS WIWL

-ADDITIONAL PREMIUM WAR RISK CLAUSE
WITHOUT PREJUDICE TO THE OTHER PROVISIONS OF THIS CHARTER
WITH RESPECT TO WAR RISKS,  ANY ADDITIONAL PREMIUM(S)
PAYABLE BY THE OWNER UNDER THE VESSEL'S WAR RISK INSURANCE
COVER (WHETHER SUCH ADDITIONAL PREMIUM IS PAYABLE IN
RESPECT OF AN AREA DESIGNATED AS AN ADDITIONAL PREMIUM



AREA BEFORE OR AFTER THE DATE OF THIS CHARTER), BY VIRTUE OF
THE VESSEL
(i) PROCEEDING TO, ENTERING, REMAINING AT, AND/OR DEPARTING
FROM ANY AND ALL LOAD PORTS UNDER THIS CHARTER AND/OR
(ii) PROCEEDING TO, ENTERING, REMAINING AT AND/OR DEPARTING
FROM ANY AND ALL DISCHARGE PORTS UNDER THIS CHARTER AND/OR
ANY CREW BONUS WHICH THE OWNER AGREES TO PAY IN
CONSEQUENCE OF THE MATTERS SPECIFIED IN (I) AND

(II) ABOVE, SHALL BE FOR THE CHARTERERS'ACCOUNT WHO ARE TO
PAY TO THE INSURERS THE AMOUNT DUE AGAINST PRESENTATION OF
UNDERWRITERS/BROKERS INVOICES (IN RESPECT OF PREMIUM) AND
AGAINST OWNERS' INVOICES (IN RESPECT OF CREW WAR
BONUS). AMOUNT OF CREW WAR BONUS SHALL BE IN LINE WITH THE
INTERNATIONAL INDUSTRY STANDARDS AND PRACTICE. CHARTERERS
SHOULD BE ENTITLED TO RECEIVE A DISCOUNT OR REBATE ON WAR
RISK INSURANCE PREMIUM PAYMENT IF OWNERS MANAGE TO OBTAIN
ANY SUCH DISCOUNT OR REBATE FROM THEIR UNDERWRITERS.
OWNERS TO NOTIFY CHARTERERS ABOUT ANY EXPECTED EXTRA COST
WHICH MAY DEEM TO BE APPLICABLE UNDER THIS CLAUSE.

PILOTAGE CLAUSE :
PILOTAGE COSTS INCL. TURKISH STRAITS COST PASSAGE IF ANY TO BE
FOR CHARTERERS' ACCOUNT.

ANY TAXES AND/OR DUES ON VESSEL AND/OR CARGO AND/OR FREIGHT
AND OR HIRE (INCLUDING ANY INCOME TAX LEVIED ON FREIGHT BY
AUTHORTIES AT LOAD OR DISCHARGE PORT(S) OR ANY NIGERIAN
CONSERVANCY DUES INCLUDING BUT NOT LIMITED TO CARGO
HANDLING DUES AND/OR CHARGES, NMA LEVY FEE IF IMPOSED TO BE
FOR CHARTERERS' ACCOUNT AND TO BE SETTLED DIRECTLY BY THE
CHARTERERS.

CHARTERERS TO ARRANGE THEMSELVES FOR THE NIGERIAN
CERTIFICATE OF COMPLIANCE, AT THEIR TIME AND EXPENSES. ANY
DELAYS INCURRED IN SECURING THE ABOVE TO BE FOR CHARTERERS
ACCOUNT. TIME AWAITING NAVAL CLEARANCE TO BE FOR
CHARTERERS ACCOUNT. ANY DELAYS IN OBTAINING NIGERIAN TASK
FORCE PERMISSION TO ENTER NIGERIAN WATERS TO COUNT AT FULL
HIRE RATE.

IF ANY EXTRA INSURANCE DUE TO VESSEL'S FLAG / AGE . CLASS TO BE
FOR CHARTERERS  ACCOUNT AND TO BE SETTLED DIRECTLY BY THEM.

NO OFF HIRES TO COUNT IN CASE OF ANY DELAYS IN NIGERIA IN
BERTHING, DISCHARGING OR SAILING DUE TO STRIKES,BAD WEATHER,
LOCKOUTS,RESTRAINTS, WORK-TO-RULE, GO SLOW AND OF OTHER
CAUSE OVER WHICH OWNERS/MASTER/CREW HAVE NO CONTROL. ANY
EXPENSES DERIVING THEREFROM, IF ANY, TO BE FOR CHARTERERS
ACCOUNT AND TO BE SETTLED DIRECTLY BY THEM.

11



ARBITRATION/ GENERAL AVERAGE : IN LONDON, ENGLISH LAW TO
APPLY
This charter party is governed by English law and all disputes arising under or in
connection with it shall be referred to arbitration in London.
The arbitration shall be conducted in accordance with one of the following LMAA
procedures

1. Where the amount claimed is less than 100 000 usd excluding interest. The
reference shall be to sole arbitrator and the arbitration shall be conducted
in accordance with the LMAA FALCA Rules

2. where the amount claimed by the claimants is less than usd 30,000 excluding
interest, the reference shall be to a sole arbitrator and the
arbitration shall be conducted in accordance with the LMAA Small Claim Procedure;

3. in any case where the LMAA procedures referred to the above do not apply, the
reference shall be to three arbitrators (one to be appointed by each of
the parties and the third by the arbitrators so chosen) in accordance with the LMAA
terms in force at the relevant time.

ALL OTHER TERMS AS PER SHELL TIME 4 CPA WITH VITOL 2005
ADDITIONAL CLAUSES 43-90 WITH LOGICAL AMENDMENTS AND
ALTERATIONS

CHARTERERS SUBJECTS ON THIS FIXTURE HAVE BEEN LIFTED AT
15.00 LONDON TIME TODAY 10TH JULY 2009.CHARTERERS HAVE
SENT DIRECTLY A MESSAGE TO OWNERS OFFICE CONFIRMING THE
LIFTING OF THEIR SUBJECTS AND THE CLEAN FIXTURE OF THE VSL

2.5% TTL COMMISSIONS DEDUCTED AT SOURCE BY CHARTERERS.

DATE 10/07/09

THE TIME CHARTER OWNERS                    THE CHARTERERS

DATE: JULY 10th 2009

# EXHIBIT 2

THIS AGREEMENT IS MADE this 11th day of August 2009 BETWEEN:

1.     R SHIPPING INC of 44 Hatzikyriakou St., Piraeus, Greece ("Owners")

and

2.     CONTINENTAL SALES LIMITED of 35A Adetokunbo Ademola St., Victoria Island, Lagos, Nigeria ("CSL")

WHEREAS:

1.     By a charterparty dated 10th July 2009 comprising a Final Fixture Recap produced by World Sea Trade SA, with Shelltime 4 and Vitol 2005 Additional Clauses 43-91 (logically amended) ("the Charterparty"), Owners agreed to let the vessel "AINAZI" to CSL for a period of 6 months + 6 months +/– 10 days in CSL's option;

2.     CSL failed to pay Owners an agreed sum as a performance guarantee pursuant to the terms of the Charterparty;

3.     The Charterparty was terminated on 14th July 2009.

IN CONSIDERATION of the mutual undertakings hereinbelow recorded and agreed, it is this day agreed as follows:-

1.     CSL acknowledges its repudiatory breach of the Charterparty, the lawful termination of the Charterparty on 14th July 2009, and Owners' entitlement to damages thereunder;

2.     CSL acknowledges that Owners' damages under the Charterparty include (without prejudice to the generality of damages suffered) the following:

(a)     US$ 69,000 (United States Dollars Sixty Nine Thousand) for time lost to the vessel "AINAZI" prior to termination and expenses incurred to date by Owners;

(b)     US$ 660,000.00 (United States Dollars Six Hundred and Sixty Thousand) in respect of lost hire under the Charterparty (being the

difference in hire the vessel "AINAZI" would have earned under the Charterparty and that which she is agreed deemed to be able to earn in other employment over the minimum contractual period of hire under the Charterparty);

(c)    any and all other proven expenses (including but not limited to legal costs and expenses whersoever incurred) arising out of or in connection with the pursuit and/or recovery of Owners' damages aforesaid.

3.    CSL shall pay the aforementioned agreed damages upon demand.

4.    Owners undertake to make no demand for payment of the aforementioned agreed damages before close of business, Geneva banking hours, on Friday 21st August 2009 conditional upon CSL remitting to Owners' account (of the details of which CSL hereby acknowledge having been apprised) by that time (and the same having been confirmed received therein) the following amounts:

(i) US$ 660,000.00 (United States Dollars Six Hundred and Sixty Thousand) to be held by Owners on the terms set out in clause 5 below; and

(ii) US$ 69,000 (United States Dollars Sixty Nine Thousand) for the immediate benefit of Owners in compensation for CSL's breach of the Charterparty (together "the Payments").

Failure to remit the Payments shall crystallize Owner's immediate entitlement to the aforementioned agreed damages upon demand.

5.    Should CSL remit the Payments as set out in clause 4 above, Owners shall:-

(a)    as soon as practically possible, but in any case latest within 4 (four) working days after receipt of the Payments, nominate to CSL an alternative vessel ("the Alternative Vessel") to perform the service for which "AINAZI" was fixed under the Charterparty;



(b)     let the Alternative Vessel to CSL on the same terms and conditions (with logical agreed amendments as to delivery dates, etc.) as applied under the Charterparty; and

(c)     hold the remitted sum of US$ 660,000.00 (United States Dollars Six Hundred and Sixty Thousand) as a performance guarantee under the charterparty for the Alternative Vessel.

6.     Owners undertake that no further claims will be made in respect of CSL's repudiatory breach of the Charterparty conditional upon (i) CSL remitting the Payments under clause 4 above, and (ii) CSL fully and timeously fulfilling all its obligations arising out of or in connection with their employment of the Alternative Vessel.

7.     This Agreement is subject to English law and to the provisions for arbitration contained in the Charterparty.

Signed this 11th day of August 2009

................................................        ................................................
for and on behalf of B SHIPPING INC          for and on behalf of CONTINENTAL
                                             SALES LIMITED

11th August, 2009

# EXHIBIT 3

**From:** Philip A. Bush [mailto:mail@pabushlaw.com]
**Sent:** Monday, August 31, 2009 4:08 PM
**To:** 'Continental Sales Limited'
**Cc:** 'WORLD SEA TRADE SA'; 'David Aikman'
**Subject:** AINAZI - NOTIFICATION OF APPOINTMENT OF ARBITRATOR

Dear Sirs

Previous exchanges refer. In light of your failure to fulfill the payment obligations under the attached Agreement, our clients, R Shipping Inc., have today appointed Mr. David Aikman as their arbitrator in respect of the agreed damages therein set out. This message serves as notice under section 16(5)(a) of the Arbitration Act 1996 that you appoint an arbitrator within 14 days of today's date, absent which the terms of section 17 of the Act will apply. Mr. Aikman's details are as follows:-

**David J. Aikman.**
Maritime Arbitrator

C/o Allington Agencies Limited
64, Allington Drive, Tonbridge, Kent TN10 4HH. United Kingdom
Tel: 00 44 (0) 1732 366128.          Fax: 00 44 (0) 1732 354923
Mobile: 0781 842 3613          VOIP: 00 44 (0) 560 3427 818

E Mail: allagents@btconnect.com or postmaster@allagents.org.uk

Please be guided accordingly.

Kind regards
Philip Bush

P.A. BUSH LAW OFFICES
4th Floor
72, Kolokotroni Street
Piraeus 185 35
Greece
Tel: ++ 30 210 41 73 944
Fax:++ 30 210 41 79 590

Regulated by the Solicitors Regulation Authority.

The contents of this email are confidential to the intended recipient. If the reader is not the intended recipient, or the agent of the intended recipient, any unauthorised use, disclosure, copying, distribution or dissemination is strictly prohibited. If received in error, please contact P.A. Bush Law Offices quoting the name of the sender and the addressee, and delete it immediately from your system. Please note that neither P.A. Bush Law Offices nor the sender accepts any responsibility for viruses and it is your responsibility to scan the email and attachments (if any) for the same.

EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
R SHIPPING  INC.,                                          :        09 Civ.
                                                           :
                                Plaintiff,                 :        ECF CASE
                                                           :
        - against -                                        :
                                                           :
CONTINENTAL SALES LIMITED,                                 :
                                                           :
                                Defendant.                 :
------------------------------------------------------------------X

**AFFIDAVIT IN SUPPORT OF PRAYER FOR EX PARTE ORDER OF MARITIME
ATTACHMENT AUTHORIZING PROCESS OF MARITIME ATTACHMENT**

State of Connecticut   )
                       )      ss:  Town of Southport
County of Fairfield    )

        Kevin J. Lennon, being duly sworn, deposes and says:

        1.      I am a member of the Bar of this Court and represent the Plaintiff herein.  I am

familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the

issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the

Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

                        **<u>DEFENDANT IS NOT PRESENT IN THE DISTRICT</u>**

        2.      I have attempted to locate the Defendant, CONTINENTAL SALES LIMITED,

within this District.  As part of my investigation to locate the Defendant within this District, I

checked the telephone company information directory, as well as the white and yellow pages for

New York listed on the Internet or World Wide Web, and did not find any listing for the

Defendant.  Finally, I checked the New York State Department of Corporations' online database

which showed no listings or registration for the Defendant.

## DEFENDANT IS NOT PRESENT IN ADJACENT DISTRICTS

3.    I have also attempted to locate the Defendant within the adjacent Districts of New Jersey and Connecticut. As part of my investigation to locate the Defendants within these adjacent Districts, I checked the telephone company information directory, as well as the white and yellow pages for New Jersey and Connecticut listed on the Internet or World Wide Web, and did not find any listing for the Defendant. I also checked with the State of New Jersey Business Gateway Service and the State of Connecticut's C.O.N.C.O.R.D. service to determine whether the Defendants might have a presence in the adjacent Districts and this inquiry showed no listings or registration(s) for the Defendant.

4.    I submit based on the foregoing that the Defendant cannot be found within this District, or in adjacent Districts, within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

5.    Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendant. The charter party attaches as Exhibit 1 to the Complaint directs the Defendant to make payment in U.S. Dollars. Upon information and belief it is the normal custom and practice of the Defendant to remit payments on its commercial contracts in U.S. Dollars.

6.    This is Plaintiff's first request for this relief made to any Court.

## PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER

7.    Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil

2

Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy R. Siegel, Coleen A. McEvoy, Anne C. LeVasseur, Darin L. Callahan or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex Parte Order and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold property of, for or on account of, the Defendant.

8.      Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendant.

9.      To the extent that this application for an Order appointing a special process server with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

10.     Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendant, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for

–3–

prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

11.     Further, in order to avoid the need to physically serve the garnishees/banks daily and repetitively, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service throughout the remainder of the day upon which service is made commencing from the time of such service; and such service to be further deemed effective through the end of the next business day, provided that another service is made that day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

12.     Several garnishee banks, including, but not limited to, J.P. Morgan Chase and BNP Paribas, have recently refused to consent to deem service of Rule B Orders and Writs continuous which will necessitate parties to serve these garnishees numerous times throughout any given day.  In seeking an Ex Parte Order deeming service continuous the Plaintiff relies on the holding on *DNSD Subsea AS v. Oceanografia, S.A. de CV*, 569 F. Supp. 2d 339, 347 (S.D.N.Y. 2008) which, in upholding the propriety of an Ex Parte Order which deemed service continuous, stated as follows:

> Clearly, the goal of the continuous service provision contained in the order signed by Judge Karas in this case and by Judge Scheindlin in *Ulisses* was *not* to undermine the Second Circuit's prohibition on the attachment of after-acquired property announced in *Reibor*.  Rather, the continuous service provision 'was intended to avoid the absurdity, security problems, and inconvenience of requiring the garnishee banks to accept service repeatedly throughout the day.' *Ulisses, 415 F. Supp. 2d at 328*.  Indeed, the absence of such a continuous service provision – either by court order or by consent from the garnishees – would inevitably result in the posting of lawyers and/or process servers at bank offices around the clock

-4-

in an attempt to capture EFTs at the precise moment of their arrival. Defendant's narrow reading of *Reibor*, would, in effect, overrule the Second Circuit's later holding in *Winter Storm* – something the Second Circuit expressly declined to do in *Aqua Stoli* -- by making it virtually impossible to attach EFTs in Rule B cases.

13.     The Courts within the Southern District of New York have an interest in preserving the efficacy of the Ex Parte Orders issued therein. As a result, and in order to give effect to the Rule B relief requested herein, the Plaintiff request that the Court issue an Ex Parte Order deeming service continuous.

Dated: September 3, 2009

_____
                                                          Kevin J. Lennon

Sworn and subscribed to before me
this 3rd day of September 2009.

_____
NOTARY PUBLIC

Sharmaine M Passaro
Notary Public-Connecticut
My Commission Expires
March 31, 2014

–5–